**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT O'ROURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-1795 |
| | ) | |
| DETECTIVE DAVID KING; | ) | **JURY TRIAL DEMANDED** |
| DETECTIVE STEVEN BURLE; | ) | |
| OFFICER ARI B. ZELMANOW, | ) | |
| CHIEF OF POLICE DANIEL ISOM, | ) | |
| ST. LOUIS METROPOLITAN POLICE | ) | |
| OFFICERS DOE 1-3; and | ) | |
| BOARD OF POLICE COMMISSIONERS | ) | |
| OF THE CITY OF ST. LOUIS, *comprised of* | ) | |
| *its members* RICHARD GRAY, THOMAS | ) | |
| IRWIN, ERWIN O. SWITZER, BETTYE | ) | |
| BATTLE-TURNER, and | ) | |
| MAYOR FRANCIS G. SLAY, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.     Plaintiff Scott O'Rourke was peaceably engaged in a political protest on May 24,

2012, when St. Louis Metropolitan Police Department ("SLMPD") Officers Zelmanow and Does

1-3 unlawfully pepper-sprayed Mr. O'Rourke, shoved him to the ground, arrested him, and

locked him in a small SLMPD interrogation room where SLMPD Detective David King then

threatened, intimidated, and violently attacked Mr. O'Rourke—breaking his nose, blackening his

eye, and permanently damaging his face—as SLMPD Detective Steven Burle stood by and

watched. Defendants King and Burle later attempted to cover up their abhorrent actions by

fabricating additional charges against Mr. O'Rourke, of which he was acquitted.

2.      This is a civil action pursuant to 42 U.S.C. § 1983 seeking money damages against Detective David King, Detective Steven Burle, Officer Ari Zelmanow, and Officers Doe 1-3 (the "Defendant Officers"), who as police officers of the SLMPD, acting alone and in concert, unlawfully assaulted, battered, arrested, used excessive force against, and caused the detention of Plaintiff, and failed to prevent the unlawful acts of others, in retaliation for Plaintiff's decision to exercise his First Amendment right to participate in political protest, and in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of Missouri.

3.      Plaintiff also seeks monetary damages against the St. Louis Board of Police Commissioners (the "Board") and former Police Chief Daniel Isom on the grounds that the Board failed on a continuing basis to train, instruct, supervise, control and discipline the officers of the SLMPD, including the Defendant Officers; that said failures were a result of official policy or the custom and practice of the Board and the SLMPD; and that said failures caused the deprivation of Plaintiff's rights secured by the United States Constitution and the laws of the State of Missouri.

**PARTIES**

4.      At all times referred to herein, Plaintiff Scott O'Rourke was a citizen and resident of the City of St. Louis.

5.      At all times referred to herein, Defendant David King ("Defendant King") was a sworn police officer of the SLMPD, was acting in such capacity as an agent, servant, and employee of the SLMPD, was acting under the direction and control of the City of St. Louis Board of Police Commissioners, and was acting pursuant to either official policy or the custom and practice of the SLMPD. Defendant King is sued in his individual capacity.

6.     At all times referred to herein, Defendant Steven Burle ("Defendant Burle") was a police officer of the SLMPD, acting in such capacity as an agent, servant and employee of the SLMPD, was acting under the direction and control of the City of St. Louis Board of Police Commissioners, and was acting pursuant to either official policy or the custom and practice of the SLMPD. Defendant Burle is sued in his individual capacity.

7.     At all times referred to herein, Defendant Ari Zelmanow ("Defendant Zelmanow") was a sworn police officer of the SLMPD acting in such capacity as agent, servant and employee of the SLMPD, acting under the direction and control of the City of St. Louis Board of Police Commissioners, and acting pursuant to either official policy or the custom and practice of the SLMPD. Defendant Zelmanow is sued in his individual capacity.

8.     Defendant Officers Doe 1-3 are sworn police officers of the SLMPD actin in such capacity as agents, servants, and employees of the SLMPD, acting under the direction and control of the City of St. Louis Board of Police Commissioners, and acting pursuant to either official policy or the custom and practice of the SLMPD. The identities of each of the Defendant Officers Doe 1-3 are presently-unknown and will be ascertained through the course of discovery. Defendant Officers Doe 1-3 are sued in their individual capacity.

9.     At all times referred to herein, Defendants King, Burle, Zelmanow, and Officers Doe 1-3 acted under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Missouri, and the SLMPD, and pursuant to their authority as police officers.

10.    Plaintiff sues Defendant Richard Gray in his official capacity as former President of the Defendant Board of Police Commissioners of the City of St. Louis.

11.    Plaintiff sues Defendant Thomas Irvin in his official capacity as former Vice-

President of the Defendant Board of Police Commissioners of the City of St. Louis.

12.     Plaintiff sues Defendant Erwin O. Switzer in his official capacity as former Purchasing Member of the Defendant Board of Police Commissioners of the City of St. Louis.

13.     Plaintiff sues Defendant Bettye Battle-Turner in her official capacity as former Treasurer of the Defendant Board of Police Commissioners of the City of St. Louis.

14.     Plaintiff sues Defendant Mayor Francis G. Slay in his official capacity as Ex-Officio Member of the Defendant Board of Police Commissioners of the City of St. Louis.

15.     Defendant Daniel Isom is the former Chief of Police for the SLMPD, appointed and controlled by the Board of Police Commissioners to enact and enforce the policies and procedures of the SLMPD and the Board, to train, supervise, discipline, monitor and control the conduct, acts, and actions of the officers of the SLMPD, including the individually-named Defendant Officers. Defendant Isom is sued in his official capacity.

16.     Defendant Board of Police Commissioners of the City of St. Louis (the "Board") was organized and existing under the laws of the State of Missouri and at all times referred to herein was the policymaker for the SLMPD and had the duty to train, supervise, discipline, monitor and control the conduct, acts, and actions of the officers of the SLMPD, including the individually-named Defendant Officers.

17.     At all times referred to herein, Defendant Isom acted under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Missouri, and the SLMPD, and pursuant to his authority as Chief of Police for the SLMPD.

**JURISDICTION AND VENUE**

18.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental

jurisdiction of this Court to hear and decide claims arising under state law, pursuant to 28 U.S.C.

§ 1367. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants

are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## WAIVER OF SOVEREIGN IMMUNITY

19.     The State of Missouri has waived sovereign immunity against the individual

police officers and the Board of Police Commissioners of the City of St. Louis by the enactment

of R.S.Mo. § 105.711, *et seq.*[1]

20.     Upon information and belief, at the relevant time, Defendant Board had purchased

and had in effect a policy of insurance to insure itself against claims or causes of action for

damages caused by city employees engaged in government functions, including torts and civil

rights violations described herein.

21.     The purchase of that insurance constitutes a waiver of sovereign immunity by

Defendant Board.[2]

## FACTS

### *Arrest Using Excessive Force at the Occupy Movement Protest*

22.     On May 24, 2012, Mr. O'Rourke lawfully and peacefully participated in an

Occupy Movement protest in downtown St. Louis near Kiener Plaza.

23.     At some point during the protest, some members of the crowd began spray-

painting property, which upset some of the other protesters.

24.     As Mr. O'Rourke continued to peacefully protest, he noticed a scuffle between an

---

[1] *Smith v. State of Missouri*, 152 S.W.3d 275 (Mo. 2005). *See also Thomas v. St. Louis Board of Police Commissioners*, 447 F.3d 1082 (8th Cir. 2006).
[2] R.S.Mo. § 537.610.

unknown protester and Brendan Kinney, who managed property that had been targeted with the spray paint. The unknown protester broke free from Mr. Kinney and ran away through the crowd.

25.     Mr. Kinney gave chase, during which time he erroneously identified Mr. O'Rourke as the unknown protester responsible for the vandalism.

26.     Mr. O'Rourke feared that Mr. Kinney would attack him, having witnessed Mr. Kinney fighting with the unknown protester moments before. Thus, Mr. O'Rourke began to run away from Mr. Kinney.

27.     Defendant Zelmanow and unknown SLMPD Defendant Officers Doe 1-3 arrived on the scene and joined Mr. Kinney in chasing Mr. O'Rourke, but Mr. O'Rourke did not know Defendant Zelmanow and the SLMPD officers had joined the chase.

28.     At one point thereafter, Mr. O'Rourke turned around to see if Mr. Kinney had stopped chasing him, and saw that Defendant Zelmanow and Defendant Officers Doe 1-3 were also chasing Mr. O'Rourke. Thus, Mr. O'Rourke stopped running and raised his hands to signal that he did not intend to resist the police.

29.     Unprovoked, Defendant Zelmanow and the Defendant Officers Doe 1-3 immediately sprayed mace in Mr. O'Rourke's face and eyes without warning. Defendant Zelmanow and the Defendant Officers Doe 1-3 then shoved Mr. O'Rourke to the ground, arrested him, handcuffed him, placed him in a transport vehicle with other protest participants, and took them all to the SLMPD station.

30.     On information and belief, Defendant Zelmanow and the Defendant Officers Doe 1-3 used excessive force against Mr. O'Rourke in an effort to deter or discourage Mr. O'Rourke and other citizens from exercising political speech, including but not limited to the right to

peaceably assemble, which are protected under the First and Fourteenth Amendments to the United States Constitution.

31.     At the station, the SLMPD officers took Mr. O'Rourke and the other protest participants to the booking area, where Mr. O'Rourke stood in a line with several other protesters who had been brought to the station.

32.     After approximately ten minutes, Mr. O'Rourke saw Defendant King through a glass window in a nearby door. Defendant King pointed at Mr. O'Rourke and stated, "That's him."

33.     At this point, Mr. O'Rourke had not been booked or otherwise processed for intake into the jail.

34.     Defendant King then came through the door, along with Defendant Burle and one other SLMPD Officer, and grabbed Mr. O'Rourke. The officers swiftly pushed Mr. O'Rourke through the front lobby of the SLMPD station and into an interrogation room.

35.     Defendants King and Burle entered the room with Mr. O'Rourke, shackled Mr. O'Rourke's legs to the floor of a small interrogation room, removed his handcuffs, and closed the door.

### *Attack by SLMPD Detectives King and Burle*

36.     Defendant King approached Mr. O'Rourke and began asking Mr. O'Rourke questions about his identity, which Mr. O'Rourke answered. When Defendant King asked Mr. O'Rourke for his address, Mr. O'Rourke provided Defendant King with Mr. O'Rourke's mailing address, which was a P.O. Box number. Mr. O'Rourke did not have the financial means at the time to afford a permanent residence.

37.     Defendant King then shouted, "That's not a fucking address!" and swung his arm

across the interrogation table, punching Mr. O'Rourke in the face and immediately causing Mr. O'Rourke to begin bleeding.

38.     During this attack, Defendant Burle stood blocking the interrogation room door and took no action to intervene.

39.     Defendants King and Burle then left the interrogation room for a period of approximately 30 minutes while Mr. O'Rourke sat battered, bloodied, and still shackled to the floor. No medical treatment or aid was offered or provided to Mr. O'Rourke during this period of time.

40.     When Defendants King and Burle returned to the interrogation room, the two detectives stood by the door while Defendant King began interrogating Mr. O'Rourke again. Defendant King yelled at Mr. O'Rourke that he "was going to be in a world of pain tonight" and threatened Mr. O'Rourke by asking, "Have you ever had the shit beat out of you?  Get ready." This, and every other threat of violence by Defendant King, made Mr. O'Rourke fear for his immediate safety and well-being.

41.     Defendant Burle was present during the interaction and witnessed the threats made by Defendant King but took no action to intervene.

42.     At no point did Mr. O'Rourke fight back, exert any force or make any threat against Defendant King, Defendant Burle, or any other officer during the interrogation.

43.     Defendants King and Burle, with the aid and assistance of other SLMPD officers, held Mr. O'Rourke in custody for approximately five hours while he was suffering from severe injuries, during which time Mr. O'Rourke received only a single bag of ice approximately one and a half hours after being attacked by Defendant King.

***Post-Custody Medical Care***

44. Several hours after the attack, an SLMPD officer came to the interrogation room, took Mr. O'Rourke to the booking area, and told Mr. O'Rourke that he was being charged with five felonies:

> a. Felony Property Destruction;
> b. Felony Second Degree Assault;
> c. Two (2) counts of Felony Assaulting a Police Officer; and
> d. Felony Resisting Arrest.

45. The officer then placed Mr. O'Rourke in a precinct holding cell, where he sat for approximately one (1) hour, still bleeding, before being transferred to the St. Louis City Justice Center.

46. SLMPD only released Mr. O'Rourke from custody when his friends were able to bring the $15,000 for Mr. O'Rourke's bail.

47. The morning of his release, Mr. O'Rourke went to St. Anthony's Hospital to seek medical treatment for the injuries caused by Defendant King.

48. There, a physician examined Mr. O'Rourke and determined that Mr. O'Rourke had suffered a fractured nose and a blackened left eye.

49. The physician also informed Mr. O'Rourke that his fractured nose required surgery in order to correct the extensive injury.

50. For over two (2) weeks, Mr. O'Rourke suffered constant physical pain in his face while recovering from the attack.

51. Mr. O'Rourke was not able to afford the procedure to properly correct the fractures in his nose, and thus still requires surgery.

52. In addition to the physical pain Mr. O'Rourke endured, he also suffered from the psychological effects and severe trauma of being violently attacked and fearing for his life and

well-being.

***Acquitted of Defendants' Fabricated Charges***

53.    For two (2) years following Mr. O'Rourke's arrest and attack by the Defendant Officers, Mr. O'Rourke had to defend himself against fabricated and baseless charges lodged against him by the Defendants.

54.    At some point after Mr. O'Rourke's release, the charges were reduced to misdemeanor counts of property damage, assault in the third degree, and resisting arrest; however, the City of St. Louis continued to pursue the two fabricated felony counts of assaulting a law enforcement officer based on false allegations by Defendants King and Burle.

55.    The actions of Defendants King and Burle in supporting and providing the basis for these false charges against Mr. O'Rourke were to cover up, obfuscate, or otherwise ostensibly justify their use of violent and excessive force on Mr. O'Rourke.

56.    In Mr. O'Rourke's trial on the fabricated charges, which took place in the City of St. Louis Circuit Court in April 2014, both Defendants King and Burle admitted that Defendant King hit Mr. O'Rourke in the nose, but falsely claimed that he had done so because Mr. O'Rourke had first punched each of the officers with his right hand. The City of St. Louis could produce no evidence to support the officers' fabricated testimony.

57.    Mr. O'Rourke is left-handed and so testified.

58.    At the conclusion of the two-and-a-half day trial, the jury acquitted Mr. O'Rourke of *all* charges.

59.    Mr. O'Rourke, who was employed as a construction laborer, missed several days of work in order to prepare for and attend the trial.

60.    Additionally, Mr. O'Rourke incurred approximately $15,000 in legal expenses in order to defend himself against the falsified charges filed and pursued by Defendants King and Burle.

### *History of Misconduct by Detectives King and Burle*

61.    When most employees in other lines of work are found to break the law or to have engaged in misconduct, they are terminated or demoted by their employers; but SLMPD promoted and rewarded Defendants King and Burle for past bad behavior.

62.    Prior to beating, failing to protect, and falsifying charges against Mr. O'Rourke to protect themselves from repercussions, both Defendants King and Burle exhibited a history of similar misconduct, which was known to the SLMPD and the City of St. Louis. Prior unconstitutional and/or violent misconduct known to SLMPD and the City of St. Louis includes, but is not limited to, the following:

a.   On November 28, 2003, Defendant King and Officer Richard Trevor, both off-duty, assaulted and injured Jason A. Boren outside of a St. Louis bar. Thereafter, the officers charged Mr. Boren with resisting arrest and failure to obey a peace officer. There was no evidence to support these charges, and the Circuit Attorney of St. Louis dismissed the charges in exchange for Mr. Boren's agreement not to sue SLMPD, any of its employees, or the City of St. Louis. *See Director of Public Safety v. Jason A. Boren,* MO. ADMIN. HEARING COMM'N, No. 05-0468 PO.

b.   On February 15, 2006, Defendant King was involved in a police chase, which ended in the deaths of both suspects and an innocent bystander and caused serious injuries to the bystander's wife, leaving her in critical condition. The survivors filed suit against Defendant King and the Board, who ultimately settled the suit for undisclosed terms in August 2012. *See Robert E. Smith et al. v. David King et al.*, ST. LOUIS COUNTY CIRCUIT COURT, No. 09SL-CC02851.

c.   In May 2008, a federal lawsuit was filed against Defendant Burle for unlawfully entering a residence occupied by the plaintiff Alexander Lewis without a warrant. Defendant Burle and the other officers punched Mr. Lewis in the face and head and used a "taser (sic) gun"

on him. Afterward, like in Mr. O'Rourke's case, Defendant Burle and the other officers initiated false criminal charges against Mr. Lewis, including "resisting arrest" and multiple counts of second degree "assault of a law enforcement officer." The City of St. Louis proceeded to trial on the false charges and a jury found Mr. Lewis not guilty on all counts. *See Lewis v. Burle et al.*, No. 4:08-cv-00683-HEA (E.D. Mo. 2008). The parties settled the civil rights suit in May 2011.

d. On December 18, 2008, judgment was entered in a civil rights action against Defendant Burle for failure to prevent the use of excessive force and false imprisonment. There, much like the events described herein, Defendant Burle stood by and watched while his fellow officers unlawfully arrested, strangled, and beat the plaintiff for over an hour. *See Lingo v. Burle,* No. 4:06-CV-1392-CAS (E.D. Mo. 2008).

63.     Defendant Board knew or should have known that Defendants King and Burle had each displayed a pattern of the same type of unconstitutional conduct as they displayed in the present case, dating back to 2003 and 2008, respectively.

64.     Despite this knowledge, the Defendants collectively comprising the Defendant Board continued to employ Defendants King and Burle as SLMPD police officers.

65.     In 2007, Defendant Burle testified in a sworn deposition that, during his 18 year tenure with the SLMPD, he "had complaints for both physical and verbal abuse," filed against him, but could not say how many. Defendant Burle further testified that there had *never* been any disciplinary action—no reprimands, demotions, suspensions, or pay cuts—taken against him by SLMPD on the basis of complaints or allegations of abuse. *See* Deposition of Steven Burle (May 23, 2007) at 13:23-16:7, *Lingo v. Burle*, No. 4:06-cv-01392-CAS, ECF No. 78-3 pp. 527-28.

66.     In fact, SLMPD *rewarded* Defendants King and Burle for their misconduct both before their attack on Mr. O'Rourke and afterward. Despite having knowledge of Defendant King's and Defendant Burle's proven disregard for the rights of citizens and their propensity to either participate in or condone the use of violence, including the May 2012 attack on Mr. O'Rourke, the Defendant Board has awarded both Defendants King and Burle multiple pay

raises over the past ten years, totaling at least $4,694.63 for Defendant King and at least $4,709.64 for Defendant Burle.[3]

67.     Additionally, despite knowing the past misconduct of Defendants King and Burle, the Defendant Board *promoted* both officers to "Detective" at some point after their 2003 and 2008 misconduct incidents, respectively.

### *Past and Continuing Harms to Mr. O'Rourke*

68.     No amount of violent force was reasonable to use against Mr. O'Rourke as he sat shackled to the interrogation room floor in the custody of SLMPD.

69.     The actions of Defendant King were not only unreasonable, but intentional, malicious, and in reckless disregard not only for Mr. O'Rourke's constitutional rights, but also for his safety and well-being.

70.     Furthermore, Defendant Burle's failure to intervene was equally unreasonable, intentional, malicious, and in reckless disregard for Mr. O'Rourke's constitutional rights, safety and well-being.

71.     Due to the unlawful actions of Defendants King and Burle, Mr. O'Rourke suffered severe facial injuries, pain and suffering, and emotional distress. He required emergency medical attention immediately following the attack, and needs to undergo a surgical procedure to correct the permanent damage to his nose.

72.     Furthermore, Defendants King and Burle's initiation and support of fabricated

---

[3] Data gathered from publicly available records. *See* St. Louis Police Department Payroll, ST. LOUIS POST-DISPATCH, May 10, 2010, http://www.stltoday.com/news/local/crime-and-courts/st-louis-police-department-payroll/html_2b96f162-6765-11df-8bf5-0017a4a78c22.html; Moskp, Walker, St. Louis City Employee Payroll Databases, ST. LOUIS POST-DISPATCH, Feb. 3, 2014, http://www.stltoday.com/news/local/stl-info/st-louis-city-employee-payroll/html_de8d1184-b863-5194-b05a-8d4f0402574a.html and *id.,* May 6, 2015, http://www.stltoday.com/news/local/metro/st-louis-city---salary-database/html_e736ba29-fc5b-5692-b826-fcb0043ada56.html.

criminal charges against Mr. O'Rourke to cover up their unconstitutional misconduct caused Mr. O'Rourke significant reputational harm in the form of a felony arrest record. Mr. O'Rourke expended a significant amount of time and money to retain counsel and defend himself against the baseless charges.

73.     These fabricated criminal charges also caused Mr. O'Rourke to endure significant stress and emotional suffering as he faced the threat of potential incarceration if wrongfully convicted.

74.     Defendants King and Burle, by abusing their positions of authority and misusing the criminal process for the improper purposes of avoiding civil and criminal liability for their unlawful actions, deprived Mr. O'Rourke of his constitutional rights and of the time and money expended in defending those baseless charges.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL USE OF EXCESSIVE FORCE – COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant King in Count I, Plaintiff states as follows:

75.     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

76.     Defendant King punched Plaintiff O'Rourke while he was shackled to the floor as described more fully above, and thereby exercised excessive force upon Plaintiff in violation of the Fourteenth Amendments to the United States Constitution.

77.     As a direct and proximate result of the foregoing unlawful and malicious use of excessive force against Mr. O'Rourke by Defendant King, committed under color of law and pursuant to his authority as a SLMPD detective, Mr. O'Rourke suffered grievous bodily harm.

78.     As a direct and proximate result of the brutal and outrageous conduct of

Defendant King, Plaintiff O'Rourke suffered severe long-term injuries and damages including a fractured nose and a blackened eye. The attack on Mr. O'Rourke at the hands of Defendant King caused Mr. O'Rourke to be fearful for his life and well-being, and caused emotional suffering as well as bodily pain, fear, apprehension, depression and consternation. Additionally, Plaintiff has suffered special damages in the form of medical expenses and may suffer additional special damages in the future, which amount cannot yet be determined.

79.    The acts of Defendant King as described above were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Mr. O'Rourke, thus entitling Mr. O'Rourke to an award of punitive damages against Defendant King.

80.    If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Scott O'Rourke prays for judgment against Defendant King, for compensatory damages in a fair and reasonable amount, and for punitive damages, plus costs of this action, reasonable attorneys' fees, and for such other and further relief as this honorable Court deems fair and appropriate under the circumstances.

## COUNT II
### FAILURE TO INTERVENE – COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action in Count II against Defendant Steven Burle, Plaintiff states as follows:

81.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

82.    Throughout the course of the entire incident within the interrogation room, Defendant Burle was physically present and observed Defendant King raise his arm, ball his hand into a fist, shout at Mr. O'Rourke, and swing his arm across the interrogation table to punch

Mr. O'Rourke. Defendant Burle also heard Defendant King repeatedly threaten to further harm Mr. O'Rourke, and witnessed Defendant King's violent and threatening actions and statements toward Mr. O'Rourke.

83.     At all relevant times, Defendant Burle had the ability and obligation to intervene and prevent Defendant King from injuring Mr. O'Rourke, but Defendant Burle failed or refused to make any reasonable effort to stop Defendant King.

84.     At all relevant times, both during and after Defendant King's attack and violent threats against Mr. O'Rourke, Defendant Burle failed or refused to make any reasonable effort to prevent, interrupt, dissuade, stop or otherwise seek outside help in stopping Defendant King from violently attacking and threatening Mr. O'Rourke. Instead, Defendant Burle supported Defendant King's use of excessive force against Mr. O'Rourke by acting as a lookout as Defendant King carried out the attack.

85.     Further, Defendant Burle failed or refused to make any reasonable effort to attend to Mr. O'Rourke's injuries, showing at best a reckless disregard for the rights of Mr. O'Rourke.

86.     Defendant Burle's failure to intervene on Detective King's attack on Mr. O'Rourke was so egregious as to constitute integral participation in the use of excessive force in violation of Mr. O'Rourke's Fourteenth Amendment rights.

87.     As a direct and proximate result of Defendant Burle's failure to intervene and render aid, Mr. O'Rourke suffered prolonged injury, pain, and blood loss while Defendant Burle stood by and watched.

88.     At all relevant times, Defendant Burle acted under color of law and pursuant to his authority as a SLMPD detective.

89.     Defendant Burle's actions were intentional, wanton, malicious, oppressive,

reckless, and callously indifferent to the rights of Plaintiff O'Rourke, thus entitling Plaintiff to an award of punitive damages against Defendant Burle.

90.     If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Scott O'Rourke prays for judgment against Defendant Burle, for compensatory damages in an amount which is fair and reasonable, and for punitive damages, plus costs of this actions, reasonable attorneys' fees, and for such other and further relief as this honorable Court deems fair and appropriate under the circumstances.

**COUNT III**
**UNLAWFUL USE OF EXCESSIVE FORCE – COGNIZABLE UNDER 42 U.S.C. § 1983**

For his cause of action against Defendant Zelmanow and Defendant Officers Doe 1-3, in Count III, Plaintiff states as follows:

91.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

92.     Defendant Zelmanow and Defendant Officers Doe 1-3, did discharge pepper spray in Mr. O'Rourke's face and eyes without any justifiable reason, and thereby exercised excessive force upon Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

93.     As a direct and proximate result of the foregoing unlawful conduct by Defendant Zelmanow and Defendant Officers Doe 1-3, all of which was committed under color of law and under their authority as City of St. Louis police officers, Plaintiff O'Rourke suffered grievous harm to his face and eyes and was deprived of his right to be free from unreasonable seizure of his person and from the use of excessive force, in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

94.     As a direct and proximate result of the excessive force used by Defendant Zelmanow and Defendant Officers Doe 1-3, Plaintiff O'Rourke suffered severe pain and anguish, great fear for his safety, pain of the mind as well as of the body, fear, apprehension, depression, and consternation.

95.     The actions of Defendant Zelmanow and Defendant Officers Doe 1-3 were intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Plaintiff O'Rourke, thus entitling Plaintiff to an award of punitive damages against the individually-named Defendants.

96.     If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Scott O'Rourke prays for judgment against Defendant Zelmanow and Defendant Officers Doe 1-3 for compensatory damages in an amount which is fair and reasonable, and for punitive damages, plus costs of this actions, reasonable attorneys' fees, and for and further relief as this honorable Court deems fair and appropriate under the circumstances.

## COUNT IV
### FIRST AMENDMENT RETALIATION – COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Zelmanow and Defendant Officers Doe 1-3 in Count IV, Plaintiff states as follows:

97.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

98.     On May 24, 2012 Mr. O'Rourke was peacefully engaging in a lawful public protest seeking the advancement of social and economic justice. As a matter of law, Mr. O'Rourke's participation in the public protest constitutes a form of political speech protected by

the First Amendment to the United States Constitution.

99.     The actions of Defendant Zelmanow and Defendant Officers Doe 1-3 in arresting, shoving to the ground, and pepper-spraying Mr. O'Rourke for his peaceable participation in a political protest were done under the color of law and pursuant to their authority as SLMPD officers. *See Monroe v. Page*, 365 U.S. 167 (1961) (actions by an official in his/her official capacity are under color of law even if they are not in furtherance of state policy and even if they violate state law).

100.    The conduct of Defendant Zelmanow and Defendant Officers Doe 1-3 in arresting and pepper-spraying Mr. O'Rourke in the eyes and face was as a direct result of, or substantially motivated by, Mr. O'Rourke's having exercised his right to free expression by participating in peaceful protest and was therefore an unlawful and malicious attempt to harass, intimidate, and punish Plaintiff for exercising his constitutional rights. Plaintiff was wrongly arrested and detained in an attempt to limit Plaintiff's right to free expression, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

101.    On information and belief, Mr. O'Rourke was one of many other peaceable protesters arrested by SLMPD and brought to the St. Louis City Jail that day.

102.    The intended effect of the SLMPD's arrest and use of excessive force of Mr. O'Rourke and of the other peaceable protesters was to discourage Mr. O'Rourke and the other arrested individuals from exercising their First Amendment right to participate peaceably in political protest.

103.    The unconstitutional conduct of the Defendants, as described above, constitutes retaliation against Mr. O'Rourke for exercising his constitutional right to free expression.

104.    As a direct and proximate result of the actions of the Defendants, the Plaintiff has

suffered damages including but not limited to being retaliated against for assertion of a constitutional right, being harassed, physical injury, and emotional distress.

105.    The actions of Defendant Zelmanow and Defendant Officers Doe 1-3 were intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Plaintiff O'Rourke, thus entitling Plaintiff to an award of punitive damages against the individually-named Defendants.

106.    If the Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Scott O'Rourke prays for judgment in favor of Plaintiff against Defendant Zelmanow and Defendant Officers Doe 1-3 for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

### COUNT V
### MALICIOUS PROSECUTION – COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendants King and Burle in Count V, Plaintiff states as follows:

107.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

108.    Defendants King and Burle, acting individually or together and in concert, caused to be issued and assisted in the prosecution of the following criminal charges:

> a.  Two felony counts for Assault on a Law Enforcement Officer;
> b.  Misdemeanor count for Property Damage;
> c.  Misdemeanor count for Assault in the Third Degree; and
> d.  Misdemeanor count for Resisting Arrest.

109.    Defendants King and Burle were motivated in the pursuit of criminal charges

against Plaintiff not by a belief that the charges had any factual or legal merit or that probable cause for their issuance existed, but for malicious, improper, illegal, and unconstitutional purposes:

    a. Defendants sought to protect themselves from civil and/or criminal liability for the unlawful treatment of Plaintiff and their use of excessive force against Plaintiff as described above, by initiating falsified charges against; and

    b. Defendants sought to punish Plaintiff for exercising legally and constitutionally protected rights.

110. Defendants falsified their official reports and offered perjured testimony at the trial on the criminal charges in an attempt to secure a conviction against Plaintiff.

111. The conduct of Defendants King and Burle as described above violated Plaintiff's right to be free of unreasonable and unlawful seizure, secured by the Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

112. On April 2, 2016, the two-and-a-half-day trial concluded acquittal of Plaintiff of *all* of the malicious charges.

113. As a direct result of Defendants' misconduct, which constituted malicious prosecution in violation of Mr. O'Rourke's constitutional rights, Mr. O'Rourke suffered damages, including but not limited to:

    a. Plaintiff O'Rourke was forced to expend time preparing his trial defense;

    b. Plaintiff had to miss three days of work, losing approximately $120 per day; and

    c. Plaintiff incurred legal defense fees exceeding $15,000, which he has not yet been able to pay due to insufficient income.

114. The actions of Defendants King and Burle in maliciously prosecuting the charges against Mr. O'Rourke were carried out under color of law and pursuant to their authority as

SLMPD detectives.

115.    The acts of Defendants as described above were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Plaintiff O'Rourke, thus entitling Plaintiff to an award of punitive damages against the individually-named Defendants.

116.    If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Scott O'Rourke prays for judgment in favor of Plaintiff against Defendants King and Burle for actual damages, compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

### COUNT VI
### CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS
### COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendants King and Burle in Count VI, Plaintiff states as follows:

117.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

118.    Defendants King and Burle, acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights. In furtherance of this conspiracy, Defendants King and Burle committed the following overt acts:

    a.    Defendants King struck Mr. O'Rourke in the face after Mr. O'Rourke, who did not have the financial means to afford a permanent residence at the time, provided a P.O. Box as an address, and otherwise inflicted punishment upon Mr. O'Rourke as described above.

    b.    Defendant Burle failed to intercede in the beating and unlawful treatment of Plaintiff as described above, though he had the

opportunity to prevent such actions. Said failure to intercede is tantamount to tacit authorization and approval of the unlawful beating and use of excessive force.

c. Defendants King and Burle, acting in concert, intentionally fabricated and contrived two charges of Felony Assault on a Police Officer and a Felony Resisting Arrest charge against Mr. O'Rourke with the expectation and for the purpose that if a conviction were secured against Plaintiff, the Defendants would be insulated from future civil or criminal liability for their unconstitutional actions.

d. Defendants King and Burle agreed to mutually support the falsehood with statements and/or testimony.

e. Defendants King and Burle adhered to a code of silence regarding the truth about the attack on Mr. O'Rourke. Defendants refused to report the misconduct and excessive force used against Plaintiff as afore described to the Internal Affairs Division or to other supervisory or command personnel within the SLMPD.

119. Defendants King and Burle shared the conspiratorial objectives, which were to punish Mr. O'Rourke for exercising his rights to free speech and free assembly, to physically attack and verbally intimidate Plaintiff causing the physical and emotional injury as set forth above, and to avoid punishment for such abuse by maliciously fabricating and supporting the prosecution of false charges against him.

120. As a direct and proximate result of the conspiracy between Defendants King and Burle and others as described above, Plaintiff's rights to be free from the use of excessive force, unreasonable seizure, and retaliation for exercise of Plaintiff's First Amendment Rights were violated by Defendants King and Burle. Defendants King and Burle thus conspired to violate Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, which are protected by 42 U.S.C. § 1983.

121. As a direct and proximate result of the malicious, brutal and outrageous conduct

of Defendants, Plaintiff suffered severe and permanent injuries and damages including a broken nose, bruised and blackened eye, and severe pain lasting multiple weeks. The brutal assault on Plaintiff at the hands of law enforcement officers caused Plaintiff pain of the mind as well of the body and fear, apprehension, depression and consternation. Additionally, Plaintiff has suffered special damages in the form of medical expenses and legal expenses and may suffer additional special damages in the future for surgery on his broken nose in an amount which cannot yet be determined.

122.    The acts of Defendants as described above were intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants King and Burle.

123.    If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendants King and Burle, jointly and severally, for compensatory damages in an amount which is fair and reasonable, and for punitive damages, plus costs of this action, attorneys' fees and such other and further relief as this Court deems fair and appropriate under the circumstances.

<u>**COUNT VII**</u>
**ABUSE OF PROCESS UNDER MISSOURI LAW**

For his cause of action against Defendants King and Burle in Count VII, Plaintiff states as follows:

124.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

125.    On information and belief, Defendants King and Burle's purpose in instigating and continuing the criminal prosecutions against Plaintiff, where there was no evidence

whatsoever supporting any of the alleged criminal conduct by the accused, was in order to (1) deter others from expressing their constitutionally-protected rights of free speech and assembly; and/or (2) achieve criminal conviction of Plaintiff in an effort to avoid civil or criminal liability for the injuries and civil rights violations caused by Defendants against Plaintiff—both of which constitute improper collateral purposes.

126.    The actions of Defendants King and Burle in falsely implicating Plaintiff in criminal activity as set forth above constituted an improper use of process that was neither warranted nor authorized by law.

127.    Defendants King and Burle abused legal process for an unlawful purpose and with an illegitimate and collateral objective, and have acted willfully and with an ulterior motive in their use of legal process, in that Defendants King and Burle used legal process through their authority for purposes other than legitimately investigating and prosecuting criminal acts.

128.    At all relevant times, the individual Defendants were acting within the course and scope of their employment and/or agency relationship with the City of St. Louis, and acted as the employees, servants and agents of the City and its representatives.

129.    As a result of Defendants' abuse of process against Plaintiff, Plaintiff was damaged, including being forced to defend utterly baseless criminal charges brought against him.

130.    Defendants' abuse of process, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Scott O'Rourke prays for judgment against Defendants King and Burle, jointly and severally, for compensatory damages in an amount which is fair and

reasonable, for punitive damages, and for such other and further relief as this Court deems fair and appropriate under the circumstances.

**COUNT VIII**
**MUNICIPAL LIABILITY UNDER 42 U.SC. § 1983**

For his cause of action against Defendants Gray, Irwin, Switzer, Battle-Turner, and Slay, collectively comprising the Defendant Board of Commissioners, and the Chief of the St. Louis Metropolitan Police Department, Defendant Daniel Isom in Count VIII, Plaintiff states as follows:

131.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

132.    There exist within the SLMPD policies or customs, practices and usages so pervasive that they constitute department policy, which caused the constitutional deprivations suffered by Mr. O'Rourke as set forth more fully above.

133.    At all times relevant to this Complaint, Defendants King and Burle, as police officers of the SLMPD, were acting under the direction and control of the SLMPD and pursuant to its policies or customs, practices and usages.

134.    At all relevant times, the policies or customs, practices and usages of the SLMPD were set by the Board, and the Chief of the SLMPD and the Chief of the SLMPD, Defendant Daniel Isom ("Chief Isom"), who were responsible for making policy of the Police Department, its officers and operations.

135.    The policies, customs, practices and usages that exist have been:

    a.    To hit, strike, punch, throw or otherwise use excessive force against citizens, without regard for the need for the use of force, or without regard for the legality of its use.

    b.    To issue "cover" charges in encounters with citizens in which the

officer or officers have improperly used force or have used excessive force, that is, the officers charge the citizen with violations of the laws or ordinances to justify the use of force and to protect the officers from liability for their improper conduct.

c.   To act individually and to conspire with others to prevent the truth about the transgressions of the other officer or officers from being known by lying in official reports, or otherwise, or by failing to report such transgressions. This phenomenon is sometimes referred to as the code of silence.

d.   To fail to adequately and properly receive citizen complaints, thereafter investigate, and thereafter discipline, re-train, or otherwise sanction and/or remedy the transgressions of the sworn members of the SLMPD. This failure is reflected in part by the failure, on a continuing basis, of the Internal Affairs Division of the SLMPD to accurately categorize complaints and record them, to then fully and properly investigate complaints and to find violations of policy, the law or the Constitution when the evidence supports it, and to thereafter discipline, re-train or increase the supervision of officers who are in violation.

e.   To fail to adopt and maintain an effective early warning system designed to identify repeatedly deviant officers and then to act to address and correct the deviance.

f.   To fail to adopt independent investigation and review of citizen complaints, relying instead on sworn members employed by the SLMPD and assigned to Internal Affairs when the Board knows or should know that relying on sworn members of the SLMPD to investigate allegations of misconduct against brother and sister sworn members is and has been ineffective at preventing and correcting misconduct and deviance.

136.   There exists in the SLMPD a pervasive culture—a custom and practice—of misconduct fostered by, among other factors, the failure of the Internal Affairs function described herein, which has allowed the officers of the SLMPD to engage in misconduct with impunity.

137.   At all relevant times, the Defendant Board was vested with the duty and authority to train, supervise, discipline and otherwise control the officers of the SLMPD. The Board

effectively abrogated the power to so train, supervise, discipline and control the officers of the SLMPD by failing to act in the face of numerous transgressions of which the Board knew or should have known. As the lawfully designated policymaking body for the SLMPD, the Board had the power and responsibility to prevent the existence of the policies and practices as afore described and failed or refused to do so. The failure of the Board to act in the face of unconstitutional conduct as afore described caused the constitutional deprivations that have been suffered by Plaintiff O'Rourke.

138. Chief Isom was the commander in chief of the police department and the highest ranking police officer in the SLMPD. He was delegated the power and authority to control the conduct of the officers of the SLMPD by the Board, and failed or refused to properly train, control, discipline, and otherwise supervise the conduct of Defendants King, Burle, Zelmanow, and Officers Doe 1-3.

139. The Board and the Chief of Police were the policymakers for the SLMPD and the failure of the Board and Chief Isom and each of the Board members to affirmatively act in the face of transgressions about which they knew or should have known, established the policy of the SLMPD to condone and otherwise tolerate constitutionally violative conduct in general and specifically the constitutionally violative conduct alleged in this complaint. Had the Board or the Chief of Police or both of them affirmatively acted to properly train the officers of the SLMPD or to properly supervise the officers or to discipline the officers when the officers conducted themselves in unconstitutional ways, the constitutional deprivations suffered by Plaintiff O'Rourke would not have occurred.

140. The members of the Board were aware, or should have been aware, of the practice of improperly using force; of using excessive force in arresting or detaining; of issuing cover

charges in the wake of such use of force; of officers lying about the facts of the incident to cover and support the fellow officers; of the persistent failure and refusal of officers to report violations of the constitution and laws; and of officers, when asked directly or questioned about such violations, to lie about the incident, such practice being commonly known as the code of silence. Nevertheless, the Board and the Chief did nothing to prevent or stop the practices.

141.     In their failures as described above, the Board and the Chief of Police intentionally disregarded known facts or alternatively were deliberately indifferent to a risk of the constitutional violations of which they knew or should have known; they ratified the misconduct and the policies, customs and practices described above; and their culpability caused the constitutional violations suffered by Plaintiff O'Rourke.

142.     Further, as more fully described above, the Board and Defendant Isom had actual knowledge that Defendants King and Burle each had a history of utilizing excessive force, failing to intervene, and/or filing false charges against individuals whom King and Burle had injured or otherwise violated. This history of misconduct posed an objectively substantial risk of harm to individuals—including Mr. O'Rourke—subjected to the authority of King and Burle.

143.     Despite their knowledge that the individual Defendant Officers' past conduct posed and continues to pose an objectively substantial risk of serious harm to individuals like Mr. O'Rourke, acting under color of law, as policy-makers of the SLMPD, and pursuant to official policy or custom and practice, the Board and Chief Isom failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants King and Burle, in the performance of their duties to refrain from:

> a.  unlawfully and maliciously assaulting and beating a citizen and otherwise using unreasonable and excessive force before, during, or after making an arrest, whether the arrest was lawful or unlawful;

b. unlawfully striking a suspect on the head or neck with a fist or blunt object;

c. unlawfully striking a suspect who has been subdued and/or handcuffed;

d. denying a detained individual immediate medical attention for physical injuries or failing to determine whether an individual is fit for confinement before taking the individual to the station to be booked, processed, and incarcerated;

e. fabricating criminal charges and ordinance violations against a citizen for the purpose of shielding themselves from criminal or civil liability for violating that citizen's civil rights;

f. falsifying police reports and other statements, including court testimony;

g. conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Missouri; and

h. otherwise depriving citizens of their constitutional and statutory rights, privileges, and immunities.

144. The Board and Defendant Isom had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and failed or refused to do so.

145. The Board and Defendant Isom, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants King and Burle, heretofore described.

146. As a direct and proximate result of the policies, customs, practices and usages of the Board and/or the Chief of Police as described above, Plaintiff O'Rourke suffered injuries and damages, including but not limited to: being seized and deprived of his freedom; being detained in custody; suffering pain from being pepper sprayed; suffering blunt force trauma injuries to his eye and nose, causing his nose to break and his eye to be blackened; fear, apprehension, depression, anxiety, consternation and emotional distress; violation of his constitutional rights; lost time; lost money due to incurring legal expenses to defend the false charges; and loss of faith

in society. Additionally, Plaintiff O'Rourke has suffered special damages in the form of medical expenses and may suffer additional special damages in the future in an amount which cannot yet be determined.

147.    If the Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Scott O'Rourke prays for judgment against Defendants Erwin O. Switzer, Richard H. Gray, Bettye Battle-Turner, Thomas J. Irwin, Francis Slay, and Daniel Isom, jointly and severally, for compensatory damages in an amount which is fair and reasonable, plus costs of this action, attorneys' fees and for such other and further relief as this honorable Court deems fair and appropriate under the circumstances.

## **FINDER OF FACT**

148.    Plaintiff demands a jury trial of all issues properly triable by jury.

Date submitted:  November 18, 2016

Respectfully submitted,
**ArchCity Defenders, Inc.**

By: */s/ Thomas B. Harvey*
Thomas B. Harvey (MBE #61734MO)
Michael John Voss (MBE #61742MO)
Blake A. Strode # (MBE #68422MO)
Edward J. Hall # (MBE #0012692IA)
Nathaniel R. Carroll (MBE #67988MO)
1210 Locust Street, 2nd Floor
Saint Louis, MO 63103
855-724-2489 ext. 1012
314-925-1307 (fax)
tharvey@archcitydefenders.org
mjvoss@archcitydefenders.org
bstrode@archcitydefenders.org
ehall@archcitydefenders.org
ncarroll@archcitydefenders.org

*Attorneys for Plaintiff*